**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07cv41**


| | |
|---|---|
| **ALLEN FITZGERALD CALDWELL,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **ORDER** |
| ) | |
| **DONALD G. WOOD, Administrator,** ) | |
| ) | |
| **Respondent.** ) | |
| ————————————————————) | |

  **THIS MATTER** comes before the Court upon Petitioner's Petition for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 1); Respondent's Answer (Doc.  No.  3);

Respondent's Motion for Summary Judgment and supporting memorandum (Doc. Nos. 4 and 5);

Petitioner's Responses in Opposition to the Motion for Summary Judgment (Doc. Nos. 8-11);

Petitioner's Motion for Averment [sic] of Jurisdiction (Doc. No. 13); and Petitioner's Motion for

Writ of Mandamus (Doc. No. 14).

## HISTORY

**A.** **Factual Summary**

  The following factual summary is taken from the North Carolina Court of Appeals's

opinion.  State v. Caldwell, 174 N.C. App. 626, 2005 WL 3046494 (Nov. 15, 2005)

(unpublished).[1]  On July 18, 2002, Petitioner entered the First Southern Cash Advance on Sunset

Road.  Petitioner brandished a handgun as he approached the two employees who were sitting

---

  [1]  A copy of the appellate opinion is attached as Exhibit 4 to Respondent's Motion for
Summary Judgment.  (Doc. No. 5: Ex. 4.)

behind the store counter and demanded the money from their registers.  After the employees gave

him the money, Petitioner ordered the employees to go to the back of the store.  He then

approached the safe.  When Petitioner realized that the safe did not contain any money, he stated

his intention to leave through the back door.  One of the employees informed him that the back

door could only be opened with a key, and so Petitioner instructed the employee to get the key

and stated "If you do anything funny, I will shoot [the other employee]."  Id. at *1.  After

receiving the key, Petitioner ordered the employees into the bathroom and told them to count to

one hundred.  While the employees counted, one of them heard the door shut, and they left the

bathroom to call the police.  At a photo lineup later that day, both employees identified Petitioner

as the perpetrator.

Throughout the next day, Petitioner entered the First Southern Cash Advance on Alleghany Street.

Petitioner came around the counter carrying a handgun and asked the two employees where the

money was kept, and if the business had a safe.  Upon being informed that the business did not

have a safe, Petitioner took the money from the employees' cash drawers and ordered the

employees to go to the bathroom at the back of the store and count to one hundred.  As the

employees counted, Petitioner left the business through the back door.  Both employees

subsequently identified Petitioner in a photo lineup as the perpetrator.

On July 29, 2002, Petitioner approached the branch manager of the National Cash

Advance office on Freedom Drive as he unlocked the front door.  Petitioner brandished a

handgun and stated "I'm here to get your money-get all your money."  Id. at *1.  The manager

gave Petitioner all of the money from the safe and the cash drawer.  Afterwards, Petitioner

ordered the manager to go to the bathroom in the back of the business and count to one hundred.

When the manager heard the perpetrator leave through the back door, he went to the front of the

business and pressed the panic buttons. During a photo lineup, the manager identified Petitioner as the perpetrator.

**B.    Procedural History**

On April 2, 2004, after trial by jury, Petitioner was convicted in the Superior Court in Mecklenburg County, of three counts of robbery with a dangerous weapon, five counts of second-degree kidnapping, and three counts of possession of a firearm by a felon. (Doc. No. 5: Ex. 1 at 51-56.)[2]  Petitioner was sentenced to three consecutive terms of 133 to 169 months imprisonment. (Id. at 51, 53, 55.) That same day, Petitioner directly appealed his sentence and conviction. (Id. at 60-61.) The North Carolina Court of Appeals, in an unpublished opinion, found no error. Caldwell, 2005 WL 3046494, at *3.

On or about November 9, 2006, Petitioner filed a pro se Motion for Appropriate Relief (MAR) with the Mecklenburg County Superior Court, which he later amended. (Doc. No. 5: Ex. 5.) On December 20, 2006, the superior court summarily denied Petitioner's MAR stating that "identical issues were resolved, or could have been resolved, against himself by the North Carolina Court of Appeals in a decision rendered November 15, 2005." (Doc. No. 5: Ex. 6.) On January 2, 2007, Petitioner filed a Petition for Writ of Certiorari in the North Carolina Court of Appeals seeking review of the denial of his MAR. (Doc. No. 5: Ex. 7.) On January 17, 2007, the North Carolina Court of Appeals summarily denied his certiorari petition. (Doc. No. 5: Ex. 10.)

**C.    Habeas Allegations**

On January 29, 2007, Petitioner timely filed the instant pro se federal habeas petition. (Doc. No. 1.) Petitioner alleges that: 1) he received ineffective assistance of appellate counsel for

---

[2]  Page references to Exhibit 1 in Document 5 refer to the handwritten page numbers located at the bottom of each page.

failure to raise the claims raised by Petitioner in his MAR and Amended MAR; 2) the trial court committed reversible error in joining the offenses for trial; 3) the trial court committed reversible error in submitting kidnapping charges to the jury in violation of his double jeopardy rights; 4) a fatal variance existed between the kidnapping charges in Petitioner's indictment and the evidence presented at trial; 5) the kidnapping charges were not separate offenses; and 6) the trial court erred in failing to give a specifically requested misidentification jury instruction.

## ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); U.S. v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

### B.  Section 2254 Standard of Review

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) sets forth:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A claim is considered "adjudicated on the merits" when it was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410). Therefore, this Court may not issue the writ even if it concludes in its independent review that the state court made an incorrect or erroneous application of the correct federal principles. See Williams, 529 U.S. at 412. In order to grant relief, this Court must establish that the state court ruling was both incorrect and objectively unreasonable. McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). When examining whether a state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), a reviewing court must be mindful that a "determination of a factual issue made by a State court shall be presumed to be correct" unless a petitioner rebuts this presumption "by clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

This standard of review is "quite deferential to the rulings of the state courts." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). This deference extends to summary dismissals. See Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000). A habeas petitioner bears the burden of establishing his claim. Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

In contrast, if a petitioner has properly presented a claim to the state court, but the state court has not adjudicated the claim on the merits, a federal court reviews questions of law and mixed questions of law and fact de novo. Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000).

## C.  Ineffective Assistance of Appellate Counsel Claims

### 1.  Standard of Review

Petitioner alleges ineffective assistance of counsel due to his appellate counsel's failure to present the seven issues raised by Petitioner in his MAR and Amended MAR. (Doc. No. 1 at 7;[3] Doc. No 5: Ex. 5.) These seven issues are addressed in turn, in the numbered paragraphs below.

When Petitioner raised his ineffective assistance of appellate counsel claims in his MAR and Amended MAR, the MAR Court denied all of the claims because they had been resolved, or could have been resolved, on direct appeal. (Doc. No. 5: Ex. 6.) This ruling implicitly states an application of North Carolina's procedural rule that provides for the denial of appropriate relief when "[u]pon a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N. C. Gen. Stat. § 15A-1419(a)(3). The North Carolina Court of Appeals summarily denied Petitioner's Petition for Writ of Certiorari.

---

[3] Unless otherwise indicated, page references refer to the ECF-generated page numbers.

(Doc. No. 5: Ex. 10.)[4]

North Carolina General Statute § 15A-1419(a)(3) generally bars collateral review in the state courts of claims that could have been brought on direct appeal but were not. The Fourth Circuit has recognized that Section 15A-1419(a)(3) is generally an independent and adequate state procedural bar. See McCarver v. Lee, 221 F.3d 583, 589 (4th Cir. 2000). However, this does not end the reviewing court's inquiry. See Brown v. Lee, 319 F.3d 162,170 (4th Cir. 2003) (citing Bacon v. Lee, 225 F.3d 470, 476-77 (4th Cir. 2000) and McCarver, 221 F.3d at 589). Where the procedural bar available in § 15A-1419(a)(3) has not been "regularly and consistently applied by the state court to a particular type of federal constitutional claim, [it] cannot be considered an adequate state law ground barring federal court review of the merits of that claim." Brown, 319 F.3d at 170 (citations omitted).

Therefore, this Court must determine whether § 15A-1419(a)(3) is regularly and consistently applied to claims of the type raised by Petitioner. See Reid v. True, 349 F.3d 788, 805 (4th Cir. 2003). "The relevant inquiry concerns the procedural posture of the defaulted claim: The question we must ask . . . is whether the particular procedural bar is applied consistently to cases that are *procedurally* analogous"– here, to ineffective assistance of appellate counsel claims on direct appeal. Id. (internal citations omitted). For obvious reasons, claims of ineffective assistance of appellate counsel cannot be brought on direct appeal. As such, Section 15A-1419(a)(3) cannot be found to be regularly and consistently applied to claims of this type.

---

[4] The North Carolina Court of Appeals summarily denied Petitioner's Petition for Writ of Certiorari. Because the denial of the certiorari petition was summary in nature, this Court will look to the MAR opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (presumption exists that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon same ground"); accord Skipper v. French, 130 F.3d 603, 609 (4th Cir. 1997).

This Court therefore finds that it is not procedurally barred from reviewing Petitioner's ineffective assistance of appellate counsel claims. Because the state court did not adjudicate Petitioner's ineffective of assistance of appellate counsel claims on the merits, this Court reviews these claims de novo. Weeks, 176 F.3d at 258.

Ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that Petitioner was prejudiced thereby-- that is, there is a reasonable probability that but for the error, the outcome would have been different. Id. at 690-94. There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689. Moreover, a petitioner bears the burden of proving Strickland prejudice; if a petitioner fails to meet this burden, then a "reviewing court need not consider the performance prong." Fields v. Attorney General of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

### 2. Prison Garb

First, Petitioner alleges that his appellate counsel was ineffective for failing to challenge the presence of the jury pool and state witnesses at a joinder motion hearing at which Petitioner was wearing prison clothes and shackles. (Doc. No. 1 at 7; Doc. No. 5: Ex. 5.) Petitioner asserts that being observed this way made him appear guilty, thus erasing any doubt that a witness may have had that he was the perpetrator. (Doc. No. 5: Ex. 5 at ¶ 10.)

Prior to trial, Petitioner's defense counsel informed the trial court that he had noticed that some of the State's eyewitnesses (the record does not reflect which witnesses) were in the courtroom during the pretrial joinder hearing while Petitioner was there in "prison garb." (Trial

Tr. at 16.)[5] Petitioner's counsel argued that "[s]ince he was the only one in the orange jump suit, the inference is drawn that he's the only one here, accused of a crime. Therefore, they can easily identify him as the person that they saw came [sic] into their establishments." (Trial Tr. at 17.) After bringing this matter to the court's attention, Petitioner's counsel requested guidance on how best to proceed under the circumstances. Id. In response, the trial court stated that it did not consider defense counsel's request to be a formal motion and therefore did not feel the need to rule on anything. (Trial Tr. at 24.) However, the trial court went on to state that:

> to the extent that the witnesses saw your client, in a jump suit, they are still obligated to testify truthfully and testify as to whether or not they, in fact, can identify him, based on what they saw or didn't see, on the day of the offenses. And, you are free to cross examination [sic] them, with respect to their having seen your client, at an earlier proceeding, without mentioning the issue of what he was wearing.

Id. The trial court concluded by stating that if counsel's request was meant to be a motion, then it was denied. Id.

Petitioner's contention that his appellate counsel was ineffective for failing to raise this claim fails because, at a minimum, he does not establish that he was prejudiced. That is,

---

[5] The record contradicts Petitioner's contention that the jury pool was present during the joinder motion hearing. Petitioner's trial counsel raised this issue only in reference to witnesses being present in the courtroom. (Trial Tr. at 16, 17.) Then, after considering and ruling on this issue, the trial judge asked the deputy to bring the jury into the courtroom and the jury's presence is subsequently noted in the trial transcript. (Trial Tr. at 24, 25, 26.) Such a request would have been unnecessary if the jury was already present in the courtroom. This conclusion is also supported by the transcript, which indicates that the joinder hearing took place "in open court, outside the presence of the jury." (Trial Tr. at 1.) In his response to the Motion for Summary Judgment, Petitioner continues to argue that the jury was present in the courtroom during the joinder hearing, contending that his trial counsel did not reference the jury's presence because counsel had not seen them. (Doc. No. 9 at 8.) Petitioner presents no evidence whatsoever to support his contention that the jury was present. His bald assertion is simply not sufficient to overcome the strong inferences created by the transcript of the proceedings that the jury was not present for the joinder hearing.

Petitioner does not establish that he likely would have prevailed on this claim if it had been raised on appeal.[6] Petitioner's claim is no more than speculation as he does not provide any evidence that any of the witnesses' observation of him in prison garb influenced their in-court identification or impacted their testimony in any way. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing"), cert. denied, 507 U.S. 923 (1993), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999). In a case where a witness saw a defendant in prison garb at a pre-trial hearing, the North Carolina Supreme Court specifically held that

> "the viewing of a defendant in a courtroom during varying stages of a criminal proceeding by witnesses who are offered to testify as to the identity of the defendant is not in and of itself such a confrontation as will taint an in-court identification unless other circumstances are shown which are so 'unnecessarily suggestive and conducive to irreparable mistaken identification' as would deprive defendant of his due process right."

---

[6] Pursuant to Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." In addition, the appellate rules require the complaining party to obtain a ruling on its request, objection, or motion. In criminal cases where a question was not preserved by objection noted at trial or preserved by rule or law without any such action, the question may be the basis for an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error. N.C. R. App. P. 10(a)(4). In the instant case, the record does not clearly establish if Petitioner's counsel preserved this error for appeal. While Petitioner's counsel raised concerns about the witnesses' presence in the courtroom during the hearing while Petitioner was in prison garb, it does not appear he stated the specific grounds for the ruling he desired. (Trial Tr. at 17) (" I don't know if there is any case for such a thing before. I don't know what remedy I'm [sic] seek"). If Petitioner's counsel is not deemed to have objected so as to satisfy the requirement of Rule 10(a)(1) of the North Carolina Rules of Appellate Procedure, an appellate court would not have considered Petitioner's claim. See State v. Cummings, 346 N.C. 291, 313-14 (1997); State v. Golphin, 352 N.C. 364, 460 (2000). Because the record is unclear as to whether this issue was properly objected to so as to preserve the issue for appeal, (Trial Tr. at 17, 24), the Court will address the claim as if it were preserved.

State v. Hannah, 312 N.C. 286, 292 (1984) (quoting State v. Covington, 290 N.C. 313, 324 (1976)). In the instant case, as in Hannah, each of the witnesses positively identified Petitioner as the robber prior to trial. See (Trial Tr. at 195-96, 225-26, 260-61, 284-85.) Petitioner has not established that his due process rights were violated by any of the witnesses viewing him in prison garb during the joinder hearing. The record and state case law support a conclusion that Petitioner would not have prevailed had this issue been raised on direct appeal. As such, Petitioner has not established that he was prejudiced by his counsel's failure to raise this issue on appeal, and his ineffective assistance of appellate counsel claim is dismissed.

### 3. Failure to Produce a Gun

Petitioner also alleges that his appellate counsel was ineffective for failing to challenge his convictions for armed robbery and/or possession of a firearm by a felon on the basis that the State failed to introduce into evidence the gun(s) used during the robberies. (Doc. No. 1 at 7; Doc. No. 5: Ex. 5 at ¶¶ 27-32.)[7]

Again, at a minimum, Petitioner has failed to establish that he was prejudiced by his appellate counsel's failure to raise this issue on appeal because North Carolina law does not require the physical production of a firearm for an armed robbery or felon in possession of a firearm conviction. Under North Carolina law, a defendant may be convicted of armed robbery if he commits the robbery "having in possession or with the use or threatened use of any firearm or

_____

[7] As the basis for this claim, Petitioner references an argument made at trial by his trial counsel. (Doc. No. 5: Ex. 5 at ¶ 28.) When the State rested, Petitioner's counsel argued, among other things, that with regard to the armed robbery charges, the State failed to meet its burden of proving beyond a reasonable doubt that the firearm involved in the case was, in fact, a firearm. (Trial Tr. at 335-36.) Trial counsel argued that if the firearm at issue was really a BB gun or a replica, then the appropriate charge would be common law robbery not armed robbery. (Trial Tr. at 336.) The trial court rejected this argument as not supported by the case law. (Trial Tr. at 335-36.)

other dangerous weapon." N.C. Gen. Stat. § 14-87(a). In seeking an armed robbery conviction, the State is only required to prove "that the victim reasonably believed that the defendant possessed, or used or threatened to use a firearm in the perpetration of the crime." State v. Lee, 128 N.C. App. 506, 510 (1998). When a person commits a robbery with what appears to be an operable firearm, and there is no evidence presented to the contrary, the law presumes that the firearm is dangerous. State v. Joyner, 312 N.C. 779, 782 (1985); State v. Thompson, 297 N.C. 285, 289 (1979). "In an armed robbery case the jury may conclude that the weapon is what it appears to the victim to be in the absence of any evidence to the contrary . . . ." State v. Allen, 317 N.C. 119, 125 (1986).

In the instant case, four witnesses at trial testified that Petitioner brandished a gun during the robberies. (Trial Tr. at 186, 189, 191, 200, 217, 219, 255 -56, 274, 279-80.) One witness also testified that Petitioner threatened to shoot her co-worker. (Trial Tr. at 190.) Such evidence, at a minimum, established the "threatened use of a firearm." Petitioner, in contrast, has presented no evidence that the gun he brandished was not real or operable. Merely insinuating through cross-examination that the gun may not have been real, by asking a victim if he or she was positive the gun brandished was real, is insufficient to overcome the presumption the gun was real and operable. See Thompson, 297 N.C. at 289.

The testimony from multiple eyewitnesses that Petitioner possessed a firearm for purposes of the armed robbery convictions also established possession for his felon in possession convictions. The eyewitness testimony referenced above was clearly relevant and admissible evidence. See N.C. Gen. Stat. § 8C-1, Rule 402. In contrast, Petitioner presented no evidence at trial, or at his subsequent state court proceedings, that the gun was not real. His contention that he should not have been convicted of this crime without the physical production of the gun is

simply erroneous.  See e.g., State v. Lawson, 159 N.C. App. 534, 537-39 (2003) (affirming a

defendant's conviction for armed robbery and possession of a firearm by a felon where the only

evidence of possession was eyewitness testimony and a videotape of the robbery).  Consequently,

Petitioner was not prejudiced by his appellate counsel's failure to raise this claim and his

ineffective assistance of counsel claim on this basis is dismissed.

### 4.        Witnesses Present at Joinder Hearing

_____Petitioner also alleges that his appellate counsel was ineffective for failing to challenge

the presence of the jury pool[8] and some of the State's eyewitnesses at a joinder motion hearing

where details about the crimes were discussed that may not have been previously known by the

witnesses.  (Doc. No. 1 at 7; Doc. No. 5: Ex. 5 at ¶¶ 14-26.)

At a minimum, Petitioner's claim fails because he cannot establish that he was prejudiced

by his appellate counsel's failure to raise this issue on appeal.  In order to preserve a question for

appellate review, "a party must have presented to the trial court a timely request, objection, or

motion, stating the specific grounds for the ruling the party desired the court to make if the

specific grounds were not apparent from the context."  N.C. R. App. P. 10(a)(1).  Petitioner's trial

counsel raised the issue of the presence of the eyewitnesses and their viewing of Petitioner in his

prison garb.  (Trial Tr. at 16-17.)  Trial counsel did not object to the witnesses' presence based

upon the arguments they heard while sitting in the courtroom during the joinder hearing.  Because

Petitioner's trial counsel did not object on this ground so as to satisfy the requirement of Rule

10(a)(1), the most an appellate court would do is analyze the claim under the rigorous "plain

error" standard.  See N.C. R. App. P. 10(a)(4).  However, North Carolina courts have elected to

_____

[8] As previously set forth in this Order, the record does not support Petitioner's contention
that the jury pool was present during the joinder motion hearing.  See note 4.

review unpreserved issues for plain error only when the issue involves either jury instructions or admissibility of evidence.  See State v. Golphin, 352 N.C. 364, 460 (2000) (citing Cummings, 346 N.C. at 313-15).  As Petitioner's claim fits neither of these categories, the court of appeals would have declined to review the claim even if Petitioner's appellate counsel had raised the issue.  As such, Petitioner was not prejudiced by his appellate counsel's failure to raise this issue, so his ineffective assistance of counsel claim on this basis is dismissed.

_____In the alternative, the Court holds that Petitioner failed to carry his burden in establishing that he was prejudiced because he did not produce any evidence to support a conclusion that anything the eyewitnesses may have heard impacted their testimony.  Nor does Petitioner provide specific analysis as to how any allegedly impacted testimony affected the outcome of the trial.[9]  See Nickerson, 971 F.2d at 1136.  Therefore, this claim is dismissed.

_____**5.      Fatal Variance**

Petitioner also alleges that his appellate counsel was ineffective for failing to challenge the fatal variance between his indictment and the evidence presented at trial.  (Doc. No. 1 at 7; Doc. No. 5: Ex. 5 at Amended MAR.)  Petitioner asserts that his counsel should have argued that the indictment set forth that the kidnapping was done for the purpose of facilitating the commission of a felony while the evidence at trial proved that the kidnapping was done for flight purposes.  (Doc. No. 5: Ex. 5 at Amended MAR.)

---

[9]  Petitioner contends that the mention of his prior conviction for armed robbery was particularly prejudicial to him.  (Doc. No. 9 at 7.)  The transcript, however, establishes that this fact was not mentioned until after the issue of the eyewitnesses' presence in the court room was raised.  (Trial Tr. at 20-21.)  There is nothing in the record to suggest that these eyewitnesses were allowed to remain in the court room once their presence was noticed.  It is highly unlikely that their presence would be noticed and commented upon, but that they would still be allowed to remain.  Indeed, when trial counsel brought this issue to the court's attention, he twice referenced the eyewitnesses' presence in the past tense.  (Trial Tr. at 16).

Petitioner's claim fails because he cannot establish that his counsel was deficient or that he was prejudiced by counsel's failure to raise this issue. Existing North Carolina Supreme Court case law rejected an almost identical claim to the one Petitioner is arguing his appellate counsel should have raised. See State v. Hall, 305 N.C. 77 (1982), overruled on other grounds, State v. Diaz, 317 N.C. 545 (1986). In Hall, the indictment charged the defendant with asportation of the victim for the purpose of facilitating the felony of armed robbery. Id. at 82. The evidence at trial established that after robbing the victim at gunpoint, the defendants ordered the victim to get in their car (so he would not call the police right away). Id. at 80. Five miles down the interstate, the defendants ordered the victim to exit the car and shot him. Id. On appeal, the defendants argued that a fatal variance existed between the indictment and the evidence at trial because the evidence at trial established that the kidnapping was to facilitate the flight rather than the armed robbery. Id. at 82. The evidence, they argued, supported a conclusion that the robbery was complete at the time the defendants transported the victim from the gas station. Id. The North Carolina Supreme Court rejected the defendants' claim, holding that kidnapping may have dual purposes, such as facilitating a felony and facilitating flight. Id. The court found that "[s]o long as the evidence proves the purpose charged in the indictment, the fact that it also shows the kidnapping was effectuated for another purpose . . . is immaterial and may be disregarded." Id. The court further held that "the fact that all essential elements of a crime have arisen does not mean the crime is no longer being committed. That the crime was 'complete' does not mean it was completed." Id. at 82-83.

As in Hall, the Petitioner's indictment in this case set forth that the kidnapping was for the purpose of facilitating the armed robbery. Like Hall, the evidence at Petitioner's trial also supported a conclusion that the kidnapping may have had a dual purpose – to facilitate the armed

robbery and to facilitate flight.[10]  Such a dual purpose, however, did not create a fatal variance.

See id. at 82-83; see also State v. Dawkins, No. COA03-702, 164 N.C. App.780, at *3 (June 15,

2004) (unpublished) (applying Hall reasoning and finding no fatal variance where indictment

alleged kidnapping to facilitate armed robbery and evidence established dual purpose).

Petitioner's attempt to distinguish Hall by asserting that it is too ambiguous is unavailing.

(Doc. No. 9 at 16-18: Brief in Opposition to Motion for Summary Judgment.)  A general assertion

of ambiguity is insufficient to undermine the precedential value of a  case that is clearly

analogous with the instant case.  Petitioner also argues that Hall is not applicable to his case

because the evidence at his trial did not support a conclusion that the kidnapping was for the

purpose of facilitating the felony.  (Id. at 16.)  Such a general argument is unpersuasive as it

sidesteps the issue and ignores the multiple factual similarities between the two cases.  Finally,

Petitioner argues that federal case law, not Hall, should be controlling.  (Id. at 18-19.)  This

argument fails because Fourth Circuit case law is not the controlling precedent in North Carolina

state courts.  Moreover, the cases cited by Petitioner are not on point– the issue is not whether

each element of a crime must be supported by evidence but whether the evidence at trial

supported the kidnapping element of "for the purpose of facilitating a felony."

---

[10]  The Court notes the apparent conflict between the court of appeals' ruling on Petitioner's double jeopardy claim and a conclusion that the kidnapping was for the purpose of facilitating the armed robbery.  In its opinion, the court of appeals concluded that no double jeopardy violation occurred because the restraint in the bathroom was not necessary to facilitate the robbery.  Caldwell, 2005 WL 3046494, at *3.  The court of appeals also noted that the crime was "completed" before the victims were moved to the bathrooms.  Id.  While the restraint may not have been necessary, such a finding does not preclude a conclusion that such a restraint nevertheless did facilitate the robbery.  The court of appeals's language setting forth that the robbery was "completed" prior to the victims' removal to the bathrooms, taken in context, appears to be a reference to the elements of the crime being satisfied and not a finding that no further actions of any kind were being taken with regard to facilitating the robbery.

Given the controlling precedent to the contrary, Petitioner's appellate counsel's performance was not deficient for failing to raise a fatal variance claim. Petitioner has also not established that he was prejudiced by his counsel's failure to raise such a claim. Consequently, Petitioner's claim on this basis is dismissed.

**6.      Double Jeopardy**

Petitioner also alleges that his appellate counsel was ineffective for failing to raise a double jeopardy claim.[11] (Doc. No. 1 at 7; Doc. No. 5: Ex. 5 at Amended MAR). However, the record reveals that Petitioner's appellate counsel did raise this claim on appeal, <u>Caldwell</u>, 2005 WL 3046494, at *3, and so this allegation of ineffectiveness is dismissed.

**7.      Failure to Order Witnesses not to Discuss their Testimony**

Petitioner's next ground of ineffective assistance is based on his appellate counsel's failure to challenge the trial court's refusal to instruct the eyewitnesses to refrain from discussing their testimony with each other. (Doc. No. 1 at 7; Doc. No. 5: Ex. 5 at Amended MAR). Petitioner asserts that the eyewitnesses were never advised by anyone as to whether they were allowed to discuss their testimony, and so they probably did discuss their testimony with each other before testifying. (Doc. No. 5: Ex 5 at Amended MAR). As a result, Petitioner concludes that a strong possibility exists that the eyewitnesses tailored their testimony, which would have made it hard for the defense to detect less than candid testimony. (<u>Id.</u>).

As an initial matter, this claim fails because it conclusory and based upon pure speculation. Petitioner provides no evidence to support a conclusion that after the trial court

---

[11] Specifically, Petitioner argues that the trial evidence failed to establish that the restraint used to convict him of kidnapping was separate and distinct from the restraint inherent to his armed robbery conviction. (Doc. No. 5: Ex. 5 at Amended MAR).

denied counsel's request to instruct the eyewitnesses about discussing their testimony, they actually spoke to one another, let alone that they tailored their testimony to be consistent with one another. Nor has Petitioner come forward with any evidence that shows how he was prejudiced. Accordingly, Petitioner's ineffective assistance of appellate counsel claim on this basis is dismissed. See Nickerson, 971 F.2d at 1136.

Moreover, even if Petitioner's claim was not too conclusory, it would still fail because there is no prejudice. Had appellate counsel raised this claim on direct appeal, it would have been denied because motions to sequester witnesses are left to the sound discretion of the trial judge and are not reviewable on appeal absent a showing of an abuse of discretion. State v. Washington, 141 N.C. App. 354, 365 (2000) (quoting State v. Young, 312 N.C. 669, 677 (1985)). The record reveals that prior to the commencement of the trial, the state trial court granted Petitioner's motion to sequester the witnesses. (Trial Tr. at 23-24). The trial court, however, did not instruct these witnesses to refrain from discussing their testimony outside of the courtroom. (Trial Tr. at 213). After the break following the testimony of the State's first witness, Petitioner's counsel informed the trial court that he had observed one witness talking to other witnesses who had not yet testified and requested that the trial judge gather the witnesses who had not yet testified and inform them that they should not discuss their testimony with each other. (Trial Tr. at 203). The trial court denied Petitioner's motion. (Trial Tr. at 205). However, the record reveals that although the trial court denied defense counsel's request to instruct the witnesses collectively, it instructed each witness individually that he/she was not to discuss his/her testimony with any other witness, at the conclusion of each of the eyewitness' testimony. (Trial Tr. at 213-14, 236, 271, 300). Petitioner offers no basis for concluding that the trial court's method of handling the matter was an abuse of discretion, and this Court does not find it to be so.

Because Petitioner would not have prevailed on this claim on appeal, he cannot establish prejudice and his ineffective assistance of appellate counsel on this basis is denied.

### 8.     Misidentification Instruction

Finally, Petitioner alleges that his appellate counsel was ineffective for failing to argue that the trial court erred when it refused to give a misidentification instruction to the jury patterned after the holding in United States v. Holley, 502 F.2d 273 (4th Cir. 1974).  (Doc. No. 1 at 7; Doc. No. 5: Ex. 5 at Amended MAR).

Counsel's decision not to raise a claim based on Holley was not ineffective because it is well settled in North Carolina that a trial court is not required to use the exact language of a charge requested by a defendant.  "A charge which conveys the substance of the requested instruction is sufficient."  State v.  Smith, 311 N.C. 287, 290 (1984).  Here, the trial court gave the jury the state's pattern jury instruction on misidentification and on credibility of witnesses (Trial Tr. at 377-80), which sufficiently conveyed the substance of the charge requested by Petitioner. See State v. Lewis 168 N.C. App. 730, 2005 WL 465524 (Mar. 15 2005) (unpublished), rev'd on other grounds, 188N.C. App. 308 (2008).[12]  In Lewis the North Carolina Court of Appeals held that a trial court did not err in refusing to give a Holley instruction when it gave the state's pattern instructions regarding the State's burden of proving defendant's identity and the credibility of witnesses.  Lewis, 2005 WL 465524, at * 4-5.  In so holding, the court of appeals concluded that the pattern jury instructions adequately conveyed "the State's burden of proof, the victim's ability

---

[12] Petitioner's appellate counsel listed this claim in the Assignment of Errors that she filed with the North Carolina Court of Appeals in 2004.  (Doc. No. 5: Ex. 1 at 76).  In April 2005, Petitioner's counsel did not brief this issue.  (Doc. No. 5: Ex. 2).  The decision in State v. Lewis 168 N.C. App. 730, 2005 WL 465524 (Mar. 15 2005) (unpublished), was issued after the Assignment of Errors was filed but prior to the filing of Petitioner's appellate brief.

to see and remember relevant facts, including those that would result in a reliable identification, and the credibility of the witness." Id. at *5.  Likewise, the trial court in this case did not err in giving the pattern jury instructions instead of a Holley instruction.  Petitioner's counsel's performance was therefore not deficient for failing to raise this claim on appeal.  Furthermore, Petitioner has not established that he was prejudiced by his appellate counsel's failure to raise a claim recently rejected by the court of appeals.  Consequently, Petitioner's ineffective assistance of appellate counsel claim based upon this issue is denied.  Because all seven of Petitioner's claims of ineffective assistance are without merit, Petitioner has not established ineffective assistance of counsel.

## D.      Improper Joinder of Offenses

Petitioner next alleges that the trial court committed reversible error when it joined his offenses, which arose from three separate incidents, for trial.  (Doc. No. 1 at 8-10).  Petitioner argues that each robbery, and the corresponding kidnapping and felon-in-possession charges, should have been tried separately.  (Id. at 8).

A prisoner is required to exhaust the remedies available to him in the state courts before he files a writ of habeas corpus in the federal courts.  28 U.S.C. § 2254(b)(1)(A).  Section 2254's exhaustion requirement demands that state prisoners must give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  This "one full opportunity" includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the State.  See id.  In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review

or by filing a state post-conviction proceeding and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N. C. Gen. Stat. § 7A-31; N.C. Gen. Stat. § 15A-1422.

Here, Petitioner raised the joinder claim on direct appeal to the North Carolina Court of Appeals. Caldwell, 2005 WL 3046494, at *2. Petitioner did not file a petition with the North Carolina Supreme Court to review the denial of his direct appeal and thus did not exhaust his joinder claim through the direct review process. While Petitioner filed a MAR (and an Amended MAR) and appealed the denial of his M AR, he failed to raise his joinder claim in his post-conviction filings. (Doc. No. 5: Ex. 5). Consequently, Petitioner has also not exhausted this claim through his state post-conviction proceedings.[13]

If Petitioner were to return to state court and attempt to raise this claim, it would be considered procedurally barred pursuant to North Carolina's mandatory post-conviction procedural bar statute, which establishes that the failure to raise a claim on direct review results in it being procedurally defaulted. See N.C. Gen. Stat. § 15A-1419(a)(3). The procedural default rule of § 15A-1419(a) is an adequate and independent state ground precluding habeas review.[14] See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). Consequently, Petitioner has procedurally defaulted this claim.

A petitioner may overcome a finding of procedural default by showing cause for the default and actual prejudice arising from the asserted constitutional error. See Breard v. Pruett,

---

[13] Petitioner has also failed to exhaust his joinder claim because he did not raise it in a federal constitutional context. Duncan v. Henry, 513 U.S. 364, 366 (1995) (a petitioner must expressly raise the same federal constitutional claim in state court that he raises in federal court); Anderson v. Harless, 459 U.S. 4, 6-7) (presentation of similar claim not sufficient).

[14] There is no indication that § 1419(a)(3) is not regularly and consistently applied to claims that concern alleged trial court error that is based upon the trial court record.

134 F.3d 615, 620 (4th Cir.1998). Petitioner alleges that his appellate counsel's failure to file or failure to inform him of the need – for federal habeas purposes – to seek discretionary review constitutes cause for his failure to exhaust. (Doc. No. 9 at 26-29: Brief in Opposition to Motion for Summary Judgment). Petitioner, however, had no constitutional right to counsel to seek appellate review in the North Carolina Supreme Court. See Ross v. Moffitt, 417 U.S. 600, 610-12, (1974) (the Due Process Clause does not require North Carolina to provide a defendant with counsel on his discretionary review to the state supreme court); Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (criminal defendant has no constitutional right to counsel to pursue discretionary state appeals or applications for review in the supreme Court). Where there is no right to counsel, an ineffective assistance of counsel claim cannot constitute "cause" for procedural default. Coleman v. Thompson, 501 U.S. 722, 752-53 (1991).

Moreover, Petitioner did not raise an ineffective assistance of appellate counsel claim for failing to challenge joinder in state court. As such, any claim by Petitioner that his appellate counsel's failure to raise this claim with the North Carolina Supreme Court excuses his procedural default is itself unexhausted. See Murray v. Carrier, 477 U.S. 478, 488-89 (1986) (ineffective assistance of counsel claims raised to excuse procedural default must be presented as independent claims to the state courts).

Alternatively, a petitioner may also overcome a procedural default by establishing that a failure to review the claim would result in a fundamental miscarriage of justice. Petitioner asserts that his procedural default of his joinder claim should be excused because it would be a fundamental miscarriage of justice to bar federal review of his claim. (Doc. No. 9 at 23). The fundamental miscarriage of justice exception excuses procedural default where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477

U.S. at 496. An actual innocence claim must be based on reliable evidence not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). In the procedural default context, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence" presented in his habeas petition. House v. Bell, 547 U.S. 518, 537-38 (2006) (quoting Schlup, 513 U.S. at 327).

In the instant case, Petitioner has not established the existence of new evidence that makes "it more likely than not that no reasonable juror would have convicted him." See House, 547 U.S. at 537-38. Indeed, Petitioner presents no new evidence at all but simply makes legal arguments about joinders. Moreover, the success of this claim would not establish Petitioner's factual innocence. Petitioner has thus failed to demonstrate that a fundamental miscarriage of justice will occur if his joinder claim is not considered. In sum, Petitioner's improper joinder claim is procedurally defaulted. He has not established cause and prejudice to excuse his default. Nor has he established that a fundamental miscarriage of justice would result from a failure of this Court to review his claim. Petitioner's improper joinder claim is dismissed.

**E.     Double Jeopardy Claim**

Petitioner also alleges that the trial court erred in submitting the kidnapping charges to the jury over his objection that it violated the prohibition against Double Jeopardy. (Doc. No. 1 at 12). As an additional claim, Petitioner asserts that "the kidnapping charged in the indictment and argued by the state was not a separate [sic] charge but was an [sic] part or element of each of the armed robbery charges [sic] which Petitioner was convicted." (Doc. No. 1 at 22). Both of these claims rest on the premise that the evidence at trial failed to establish that the restraint used to convict Petitioner of kidnapping was separate and distinct from the restraint inherent to the armed robbery. In essence, these are the same claims, and the Court will address them as one

(hereinafter "double jeopardy claim").

Petitioner raised his double jeopardy claim on direct appeal where it was denied.[15] Caldwell, 2005 WL 3046494, at *3. Because the court of appeals adjudicated this claim on the merits, the standard of review set forth in § 2254(d) applies to this claim. Therefore, relief may not be granted unless the North Carolina Court of Appeals' adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2).

After considering Petitioner's double jeopardy claim, the court of appeals ruled:

> Kidnapping is the confining, restraining, or removing from one place to another of a person sixteen years of age or over without the person's consent and for a purpose prohibited by statute. N.C. Gen. Stat. § 14-39 (2003). Our Supreme Court has stated that "'[r]estraint' connotes a restraint separate and apart from that inherent in the commission of the other felony." State v. Johnson, 337 N.C. 212, 221, 446 S.E.2d 92, 98 (1994). In a case similar to this case, this Court upheld the denial of a motion to dismiss kidnapping charges where the victims were moved from one room to another where they were confined. State v. Joyce, 104 N .C. App. 558, 410 S.E.2d 516 (1991), cert. denied, 331 N.C. 120, 414

---

[15]  Respondent argues that Petitioner has procedurally defaulted this claim because although he exhausted the claim in post-conviction proceedings, the post-conviction court denied the claim pursuant to § 15A-1419(a)(2) on res judicata grounds, and Petitioner did not exhaust this claim through the direct review process. (Doc. No. 5 at 21-22). Tellingly, Respondent provides no citations to support the proposition that Petitioner's claim should be considered unexhausted and procedurally barred in these circumstances. Indeed, case law supports the conclusion that § 15A-1419(a)(2) is not an adequate and independent state ground upon which to base a procedural default. See Brown v. Lee, 319 F.3d 162, 170 n.2 (4th Cir. 2003) (§ 15A-1419(a)(2) is not a state procedural bar for federal habeas purposes); Cummings v. Polk, No. 5:01-HC-910-BO, 2006 WL 4007531, at *7 (E.D.N.C. Jan. 31, 2006) (unpublished) (§ 15A-1419(a)(2) is not an adequate and independent procedural bar), aff'd, 475 F.3d 230 (4th Cir. 2007).

S.E.2d 764 (1992). This Court reasoned that "[t]he removals were not an integral part of the crime nor necessary to facilitate the robberies, since the rooms where the victims were ordered to go did not contain safes, cash registers or lock boxes which held property to be taken." Id. at 567, 410 S.E.2d at 521. Likewise, in State v. Davidson, 77 N.C. App. 540, 335 S.E.2d 518 (1985), disc. review denied, 315 N.C. 393, 338 S.E.2d 882 (1986), this Court held that there was sufficient evidence to establish kidnapping where perpetrators forced victims at gunpoint to the dressing rooms in the rear of the store because none of the property was kept in the dressing rooms and it was not necessary to move victims there in order to commit the robbery. This Court reasoned that the removal to the dressing rooms constituted a "separate course of conduct designed to remove the victims from the view of passerby who might have hindered the commission of the crime." Id. at 543, 335 S.E.2d at 520.

As in Joyce and Davidson, defendant's removal of the employees to the bathroom was not an integral part of the crime nor necessary to facilitate the robbery. When defendant moved the employees at gunpoint to their respective bathrooms, defendant had already taken money from the cash drawers and thus, the robbery had been completed. Furthermore, defendant did not move the employees to the bathrooms to obtain more stolen items since the bathrooms did not contain safes, cash registers, or lock boxes which held property to be taken. See Joyce, 104 N.C. App. at 567, 410 S.E.2d at 521. We hold the evidence was sufficient under N.C. Gen. Stat. § 14-39 to sustain the kidnapping convictions, and the court properly denied defendant's motion to dismiss the kidnapping charges.

Caldwell, 2005 WL 3046494, at *3.

In Blockburger v. United States, 284 U.S. 299 (1932), the United States Supreme Court

set forth the same elements test for determining if a double jeopardy violation had occurred. The

Supreme Court held that where each offense contains an element not required by the other, no

double jeopardy problem exists. Id. at 304. Here, as noted above, the court of appeals found that

the removal of the victims to the bathrooms was a separate and distinct restraint from the restraint

inherent to the armed robberies. Petitioner has failed to establish that such ruling was contrary to

or involved an unreasonable application of clearly established law as set forth by the United States Supreme Court. Likewise, Petitioner has failed to establish that the state court's judgment resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner's claims on this basis are dismissed.

## F.    Fatal Variance Claim

Petitioner also alleges that his convictions for second-degree kidnapping violated his constitutional right to a fair trial and due process because the allegations in the indictment were not supported by the evidence raised at trial. (Doc. No. 1 at 14). Petitioner asserts that his indictment alleged that the kidnapping was done for the purpose of facilitating the commission of a felony while the evidence at trial established that the kidnapping was done for the purpose of facilitating flight. (Doc. No. 1 at 15).

Petitioner did not raise this claim on direct appeal but did raise it in his Amended MAR and challenged its denial in his certiorari petition filed with the court of appeals. (Doc. No. 5: Exs. 5 and 7). In denying relief, the MAR court concluded that this claim could have been raised on direct appeal. (Doc. No. 1: Ex. A). This language properly states an application of North Carolina's procedural bar statute. See N.C. Gen. Stat. § 15A-1419(a)(3) (the failure to raise a claim on direct review results in it being procedurally defaulted). The procedural default rule of Section 15A-1419(a)(3) is an adequate and independent state ground precluding habeas review. See Lawrence, 517 F.3d 700, 714 (4th Cir. 2008) (noting that the Fourth Circuit has consistently held that § 15A-1419(a)(3) is an adequate and independent state ground for purposes of procedural default); Williams, 146 F.3d at 209 (applying § 15A-1419(a)(3) as an adequate and independent rule). Consequently, Petitioner has procedurally defaulted his fatal variance claim.

As previously discussed, Petitioner may overcome a finding of procedural default by

showing cause for the default and actual prejudice arising from the asserted constitutional error or by establishing that the failure to consider his claim will result in a fundamental miscarriage of justice. See Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009). Petitioner acknowledges that his fatal variance claim is procedurally defaulted but argues that cause exists for the default because his failure to raise this claim was due to his appellate counsel's ineffectiveness.[16] (Doc. No. 9 at 22-23: Brief in Opposition to Motion for Summary Judgment).

As previously stated in this Order, appellate counsel's decision not to raise a fatal variance claim was not ineffective in large part because existing state case law strongly supported a conclusion that a fatal variance claim would not prevail. See Hall, 305 N.C. 77. Petitioner has also failed to establish that he was prejudiced by his counsel's failure to raise such a claim. Consequently, Petitioner has not demonstrated that there is cause to excuse his procedural default.

Petitioner also argues that a fundamental miscarriage of justice would occur if this Court fails to review his fatal variance claim. Again, Petitioner presents no new evidence to support his fundamental miscarriage of justice claim with regard to his fatal variance claim. See Murray, 477 U.S. at 496 (fundamental miscarriage of justice exception excuses procedural default where "a constitutional violation has probably resulted in the conviction of one who is actually innocent"); Schlup, 513 U.S. at 324 (an actual innocence claim must be based upon reliable evidence not presented at trial). Accordingly, Petitioner has failed to establish that a fundamental miscarriage of justice would occur, and this Court finds that Petitioner has procedurally defaulted this claim.

---

[16] A petitioner must meet the exhaustion requirements for ineffective assistance of counsel claims to excuse procedural default. See Murray, 477 U.S. at 488-89 (ineffective assistance of counsel claim used to excuse procedural default must itself be exhausted in state court proceedings). Petitioner exhausted this claim by raising an ineffective assistance of appellate counsel for failure to raise this issue in both his MAR and his Petition for Writ of Certiorari. (Doc. No. 5 at Exs. 5 and 7)

_____In the alternative, even if Petitioner had not procedurally defaulted his fatal variance claim, it would still fail because it is a matter of state law. Misapplications of state law are not cognizable on federal habeas review unless they are egregiously unfair so as to amount to a deprivation of due process. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985) ("[v]ariances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process"). After reviewing the record, this Court finds that the alleged deficiency did not make the trial so egregiously unfair as to amount to a deprivation of due process, and this claim is dismissed.

## G.     Erroneous Misidentification Jury Instruction Claim

Petitioner alleges that the trial court violated his right to a fair trial and due process when it failed to give his requested misidentification instruction to the jury. (Doc. No. 1 at 23).[17]

Petitioner did not raise this claim on direct appeal but did raise it in his Amended MAR and challenged its denial in his certiorari petition filed in the court of appeals. (Doc. No. 5: Exs. 5 and 7). In denying relief, the MAR court concluded that this claim could have been raised on direct appeal. (Doc. No. 1: Ex. A). This language properly states an application of North

---

[17] As previously discussed in this Order, Petitioner specifically argues that the trial court erred when it gave the standard misidentification jury instruction instead of a misidentification jury instruction patterned after the Fourth Circuit's holding in United States v. Holley, 502 F.2d 273 (4th Cir. 1974). (Doc. No 1 at 23; Doc. No 5: Ex. 5 at Amended MAR).

Carolina's procedural bar statute.  See N.C. Gen. Stat.  §15A-1419(a)(3) (the failure to raise a claim on direct review results in it being procedurally defaulted).  The procedural default rule of Section 15A-1419(a)(3) is an adequate and independent state ground precluding habeas review.  See Lawrence, 517 F.3d at 714 (noting that Fourth Circuit has consistently held that Section 15A-1419(a)(3) is an adequate and independent state ground for purposes of procedural default); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998) (applying Section 15A-1419(a)(3) as an adequate and independent rule).  Consequently, Petitioner has procedurally defaulted his jury instruction claim.

A petitioner may overcome a finding of procedural default by showing cause for the default and actual prejudice arising from the asserted constitutional error or by establishing that the failure to consider his claim will result in a fundamental miscarriage of justice.  See Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir. 2009).  In his response to the Motion for Summary Judgment, Petitioner recognizes that his jury instruction claim is procedurally defaulted but argues that cause exists to excuse his procedural default because his failure to raise this claim was due to his appellate counsel's ineffectiveness.[18]  (Doc. No. 9 at 22-23).

As previously stated in this Order, supra at 20-21, appellate counsel's decision not to raise the misidentification jury instruction claim was not defective given the recent, unpublished case decided by the North Carolina Court of Appeals on this same issue.  State v. Lewis, No. 168 N.C. App. 730, 2005 WL 465524 (Mar. 1, 2005) (unpublished).  Moreover, Petitioner has not

---

[18] A petitioner must meet the exhaustion requirements for ineffective assistance of counsel claims to excuse procedural default.  See Murray, 477 U.S. at 488-89 (ineffective assistance of counsel claim used to excuse procedural default must itself be exhausted in state court proceedings).  Petitioner exhausted this claim by raising an ineffective assistance of appellate counsel claim for failure to raise this issue in both his Amended MAR and his Petition for Writ of Certiorari.  (Doc. No. 5 at Exs. 5 and 7)

established that he was prejudiced.

Petitioner also argues that a fundamental miscarriage of justice would occur if this Court fails to review his fatal variance claim. Again, Petitioner presents no new evidence to support his fundamental miscarriage of justice claim. See Murray, 477 U.S. at 496 (fundamental miscarriage of justice exception excuses procedural default where "a constitutional violation has probably resulted in the conviction of one who is actually innocent"); Schlup, 513 U.S. at 324 (an actual innocence claim must be based upon reliable evidence not presented at trial). Accordingly, Petitioner has failed to establish that a fundamental miscarriage of justice would occur, and so this claim is procedurally defaulted.

In the alternative, even if Petitioner had not procedurally defaulted his claim, it would still fail because it is a matter of state law. Misapplications of state law are not cognizable on federal habeas review. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). A petitioner who seeks to show a constitutional error based upon a state trial court's jury instruction bears an "especially heavy" burden, Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (quoting Henderon, 431 U.S. at 155), because an instruction violates the constitution only if it was so egregious, by itself, that the resulting conviction violates due process. See Henderson v. Kibbe, 431 U.S. 145, 154 (1977). In determining whether a jury instruction, or lack thereof, violated a defendant's due process rights, a reviewing court must make its determination in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72. Given that the trial court in the present case instructed the jury regarding misidentification and credibility of witnesses, (Trial Tr. at 377-80), and in light of the whole record, this Court does not find that the failure to give the precise instruction requested by Petitioner rendered the entire trial fundamentally unfair. Petitioner's

misidentification jury instruction claim is dismissed on this basis as well.

**H.      Motion For Averment**

Petitioner has filed a Motion for Avernment [sic] of Jurisdiction seeking to amend his federal habeas petition to include a claim that the trial court lacked jurisdiction over him based upon his Moorish American nationality.  (Doc. No. 13).

Rule 15 of the Federal Rules of Civil Procedure governs the procedure for amending Sectioon 2254 motions.  <u>See</u> Rule 12 of the Rules Governing Section 2254 Cases in the United States District Courts ("[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules").  Rule 15 provides that when a party seeks to amend a pleading more than twenty-one days after the opponent has responded thereto, the party must either secure written consent from the opponent or permission from the court.  Fed. R. Civ. P. 15(a)(1) and (2). While leave to amend should be freely given when justice so requires, Fed. R. Civ. P. 15(a)(2), the Court has discretion to deny a motion to amend when, among other reasons, an amendment would be futile.  <u>Equal Rights Center v. Niles Bolton Assoc.</u>, 602 F.3d 597, 603 (4th Cir. 2010) (citing <u>Laber v. Harvey</u>, 438 F.3d 404, 426 (4th Cir. 2006)).  A cause of action barred by an applicable statute of limitations is futile and therefore an amendment based on an untimely cause of action can be denied.  <u>See</u> <u>Keller v. Prince George's County</u>, 923 F.2d 30, 33 (4th Cir. 1991).

Petitioner's limitation period under the Antiterrorism and Effective Death Penalty Act (AEDPA) expired in 2007.  <u>See</u> 28 U.S.C. § 2244(d) (setting forth AEDPA's one-year limitation period).  Because Petitioner filed his current motion to amend on April 8, 2009, well after his one year limitation period under AEDPA had expired, it is untimely and is denied on that basis.

In the alternative, Petitioner's claim is denied as unexhausted.  Petitioner never raised this

claim in state court on direct or collateral review. He may not raise it for the first time in a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (Section 2254's exhaustion requirement requires state prisoners to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

Finally, Petitioner's motion to amend is also denied as futile because the claim is meritless. The suggestion that Petitioner is entitled to ignore the laws of the State of North Carolina by claiming membership in the "Moorish-American" nation is ludicrous. See, e.g., United States v. James, 328 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all persons within its borders"); Allah El v. Dist. Att'y for Bronx County, No. 09 Civ. 8746, 2009 WL 3756331, at *1 (S.D.N.Y. Nov. 4, 2009) ("Petitioner's purported status as a Moorish-American citizen does not enable him to violate state and federal laws without consequence"); cf. El-Bey v. United States, No. 1:08CV151, 2009 WL 1019999 (M.D.N.C. Jan. 26, 2009) (unpublished) (any claims or arguments raised by Plaintiff which are based on his membership in the Moorish American Nation are frivolous).

## I.     MOTION FOR WRIT OF MANDAMUS

Petitioner has also filed a Motion for Writ of Mandamus. (Doc. No. 14). This motion is dismissed as frivolous.

**THEREFORE, IT IS HEREBY ORDERED** that:

1.     Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**;

2.     Petitioner's Motion for Avernment [sic] of Jurisdiction (Doc. No. 13) is **DENIED**;

3.     Petitioner's Motion for Writ of Mandamus (Doc. No. 14) is **DENIED**;

4.     Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) is **DISMISSED;** and

5.	It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: December 28, 2010

Robert J. Conrad, Jr.
Chief United States District Judge